UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHANNON R., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C21-5173-MLP <br><br> ORDER |

## I.  INTRODUCTION

Plaintiff seeks review of the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in discounting her testimony, certain medical opinions, and a lay statement.[1] (Dkt. # 20 at 2.) Plaintiff also challenges the ALJ's decision on constitutional grounds, arguing that the ALJ was not validly appointed. (*Id*.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

---

[1] Plaintiff argues that these errors led to errors in the ALJ's residual functional capacity ("RFC") assessment and step-five findings, but these errors are derivative and need not be addressed separately. (*See* dkt. # 20 at 17-18.)

ORDER - 1

## II. BACKGROUND

Plaintiff was born in 1972, has two years of college education and training in administrative assisting and culinary arts, and has worked as a gas station cashier/attendant, food prep/cook, and medical records specialist. AR at 541. Plaintiff was last gainfully employed in August 2013. *Id.*

In September 2015, Plaintiff applied for benefits, alleging disability as of August 8, 2013. AR at 479-91. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 309-15, 318-25. After the ALJ conducted hearings in May and October 2017 and June 2018 (*id*. at 74-179), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 275-95. The Appeals Council granted Plaintiff's request for review and remanded the case to the ALJ. *Id*. at 306-07.

The ALJ held another hearing in July 2020 (AR at 180-221) and subsequently issued a decision finding Plaintiff not disabled. *Id*. at 20-44. The Appeals Council denied Plaintiff's request for review, and the ALJ's decision is therefore the Commissioner's final decision. AR at 2-7. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 6.)

## III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.  DISCUSSION

### A.  The ALJ Did Not Err in Assessing Plaintiff's Testimony

The ALJ summarized Plaintiff's allegations and explained that she discounted them because: (1) she did not seek treatment or consistently comply with treatment for conditions she claims are disabling, (2) Plaintiff's reported activities are inconsistent with her alleged limitations, (3) Plaintiff made inconsistent statements to providers, (4) the record contained many normal findings inconsistent with allegations of disability, and (5) Plaintiff is an unreliable historian with possible secondary gain motivation. AR at 27-36. In the Ninth Circuit, an ALJ's reasons to discount a claimant's testimony must be clear and convincing, in the absence of evidence of malingering. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

Plaintiff raises several challenges to the ALJ's assessment of her allegations. First, Plaintiff contends that the ALJ erred in finding that her lack of ongoing treatment with a neurologist undermines her allegations of disabling limitations caused by her multiple sclerosis, because Plaintiff explained why she had had trouble finding a new neurologist after she moved.

ORDER - 3

(Dkt. # 20 at 13.) The ALJ addressed Plaintiff's explanation, however, and found that it was not persuasive: Plaintiff said that she had moved away from her prior neurologist and could not find a neurologist in her new area that would take her insurance, but the ALJ pointed to evidence that Plaintiff's prior neurologist identified a neurologist in her new area, and Plaintiff did eventually begin treatment with a neurologist in her area. *See* AR at 28, 34. Plaintiff has not shown that the ALJ overlooked her explanation for her lack of treatment with a neurologist for some of the adjudicated period.

Plaintiff objects to the ALJ's summary of her treatment history, contending that the ALJ inaccurately described her as starting treatment with Vivian Blanco, M.D., "[a]round the time [she] stopped seeing" her Tacoma neurologist (AR at 29), but Plaintiff had actually started treatment with Dr. Blanco in 2000. The record confirms that Plaintiff began treatment with Dr. Blanco years before she finished treatment with her Tacoma neurologist (*id*. at 793), but Plaintiff has not shown that this factual error caused prejudice. The ALJ relied on Plaintiff's treatment timeline to show that there was a gap of years in Plaintiff's treatment by a neurologist, and Dr. Blanco is not a neurologist. *See id*. at 29. The ALJ's error in the timeline with respect to Dr. Blanco's treatment of Plaintiff did not impact the ALJ's disability determination.

Next, Plaintiff argues that the ALJ failed to consider her explanation for her inconsistent use of her CPAP machine to treat her sleep apnea. (Dkt. # 20 at 14.) Plaintiff points to evidence in the record indicating that Plaintiff needed new CPAP accessories and also needed a new sleep specialist (AR at 799, 803), but the record also shows that even when Plaintiff received referrals for a new sleep specialist, began treatment with a new specialist, and ordered new accessories, she failed to follow up and/or still failed to use the CPAP machine consistently. *See, e.g., id*. at 806, 1188, 1215. She did restart CPAP use toward the end of the adjudicated period (*id*. at 1729-

ORDER - 4

30), but Plaintiff has not shown that the ALJ erred in finding that she did not use it consistently during much of the adjudicated period.

Plaintiff notes that the ALJ cited a therapy treatment note (AR at 1048) where Plaintiff told her therapist that she was attending therapy only to maintain benefits but did not believe it would help her. (Dkt. # 20 at 14.) Plaintiff argues that this is not a reason to discount any of her allegations but overlooks the context in which the ALJ cited this treatment note: the ALJ mentioned this in a paragraph explaining why Plaintiff's history of mental health treatment did not support her allegations of disabling mental symptoms. AR at 41. Specifically, the ALJ noted that Plaintiff did not seek any mental health treatment until years after her alleged onset date and only then because she needed to in order to maintain benefits. *Id*. Plaintiff has not shown that the ALJ's reference to this treatment note was inaccurate or fails to support the ALJ's conclusion.

Plaintiff goes on to challenge the ALJ's reliance on a consultative examiner's finding that Plaintiff is a vague historian. *See* AR at 856-64. Plaintiff emphasizes that the examiner was provided with few records (dkt. # 20 at 14), but this fact does not pertain to whether Plaintiff is a vague historian. Plaintiff has not shown that the ALJ erred in crediting an examiner's finding that Plaintiff is a vague historian.

Plaintiff next challenges the ALJ's findings as to her activities, arguing that although the ALJ pointed to various reports of Plaintiff's activities, any inconsistencies in those reports can be explained by the passage of time or the fact that Plaintiff's symptoms wax and wane. (Dkt. # 20 at 14-15.) Indeed, the ALJ cited Plaintiff's descriptions of her activities in 2014 and 2015 to contrast with her 2020 hearing testimony, but also pointed to a more recent camping trip mentioned during the 2020 hearing (AR at 196-97). *Id*. at 42. Even if the ALJ failed to point to evidence of Plaintiff engaging in activities throughout the adjudicated period that are inconsistent

ORDER - 5

with her allegations and therefore erred, any error is harmless in light of the other reasons the ALJ provided for discounting Plaintiff's allegations. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

Plaintiff disputes the ALJ's finding that she has a possible secondary gain motivation. (Dkt. # 20 at 15.) The secondary gain motivation was referenced by an examining psychologist (AR at 863), and is thereby supported by the record and not mere "accusation," as Plaintiff asserts. (Dkt. # 20 at 15.) Furthermore, to the extent that Plaintiff challenges the ALJ's finding that her "unreliability as an accurate historian remains unchanged" because it implies that the ALJ did not review Plaintiff's claim *de novo*, Plaintiff overlooks the context in which the ALJ made this comment. (Dkt. # 20 at 15.) The ALJ summarized Plaintiff's treatment and symptoms since the prior administrative hearing, which explains why the ALJ compared some of her conclusions at this point to conclusions she reached in the prior decision. AR at 34. Plaintiff has cited no authority prohibiting such a comparison, and the Court is not aware of any.

Lastly[2], Plaintiff argues that the ALJ erred in contrasting normal objective findings with Plaintiff's allegations, because lack of objective support cannot solely support an ALJ's discounting of a claimant's allegations. (Dkt. # 20 at 15.) But the ALJ did not *solely* rely on objective evidence to discount Plaintiff's allegations: the ALJ relied on other reasons as well, such as lack of consistent treatment, inconsistent statements, and possible secondary gain motivation. Plaintiff has not shown that the ALJ erred in considering *inter alia* the extent to which the objective evidence corroborated her allegations. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground

---

[2] Plaintiff also summarizes her hearing testimony in the section of her brief challenging the ALJ's assessing of her allegations. (Dkt. # 20 at 15-16.) Plaintiff's summary does not identify error in the ALJ's decision and thus need not be addressed.

ORDER - 6

that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Plaintiff has not shown harmful error in the ALJ's assessment of her allegations, and the Court therefore affirms this portion of the decision.

**B.     The ALJ Did Not Err in Assessing the Medical Opinion Evidence**

Plaintiff challenges the ALJ's assessment of several medical opinions, each of which the Court will address in turn.[3]

*1.     Legal Standards*[4]

Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "'clear and convincing'" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

*2.     The ALJ Did Not Err in Discounting the Opinions of Terilee Wingate, Ph.D., and Tasmyn Bowes, Psy.D.*

Drs. Wingate and Bowes performed psychological examinations of Plaintiff in 2014, 2015, and 2019, each time completing DSHS opinions describing disabling limitations. AR at 752-74, 1358-67. The ALJ assigned partial weight to these opinions, finding Dr. Wingate's opinions inconsistent with the "largely unremarkable" mental status examinations she performed,

---

[3] Plaintiff's opening brief also contains a section summarizing "other medical evidence" that Plaintiff argues corroborates her testimony and the disputed medical opinions. (Dkt. # 20 at 11-13.) This section does not identify any particular error in the ALJ's decision and need not be addressed further.

[4] Because Plaintiff applied for benefits before March 27, 2017, the regulations set forth in 20 C.F.R. § 404.1527 and § 416.927 apply to the ALJ's consideration of medical opinions.

ORDER - 7

as well as other mental status examinations in the record. *Id*. at 37. The ALJ noted that Dr. Bowes diagnosed Plaintiff with a mild neurocognitive disorder yet did not perform any testing to support that diagnosis. *Id*. at 38. The ALJ also found that Drs. Wingate and Bowes both relied on Plaintiff's self-reports in rendering their opinions, but the ALJ discounted Plaintiff's self-reporting. *Id.* at 37-38.

Plaintiff disputes whether Drs. Wingate and Bowes relied on her self-report, but the content of their reports is consistent with the ALJ's assessment. The "clinical findings" sections of Dr. Wingate's reports consist of Plaintiff's self-reports (AR at 753, 1359-60), and, as the ALJ emphasized, Dr. Bowes' neurocognitive disorder diagnosis is not objectively supported and appears to be based on Plaintiff's reports of problems with executive functioning (*id*. at 763).

Furthermore, the ALJ also discounted these opinions based on their inconsistency with the many normal mental status examinations in the record. Although Plaintiff argues that the ALJ incorrectly found the opinions to be inconsistent with the record (dkt. # 20 at 10), she has cited no evidence to support this assertion, nor has she explained why the ALJ's citation to normal mental findings in the record (AR at 37 (citing *id*. at 1028, 1420, 1455, 1783, 1786, 1789)), as well as the normal findings of Dr. Wingate, failed to demonstrate an inconsistency.

Because the ALJ provided multiple valid reasons to discount the opinions of Drs. Wingate and Bowes, the Court affirms the ALJ's assessment of those opinions.

          3.    *The ALJ Did Not Err in Discounting Dr. Blanco's Opinions*

The record contains multiple opinions indicating disability authored by Plaintiff's primary care physician, Dr. Blanco. AR at 775-83, 866-71, 1040-42, 1045-47, 2033-35, 2064-79, 2084, 2123, 2238-40, 2345-46. The ALJ assigned little weight to most of these opinions, finding them to be inconsistent with the treatment notes of Plaintiff's neurologists and overly reliant on

ORDER - 8

Plaintiff's self-reported symptoms. *Id*. at 39. The ALJ also noted that Dr. Blanco commented on the ALJ's prior decision in her treatment notes and appears to be "actively advocating" for Plaintiff's receipt of benefits. *Id*. The ALJ assigned some weight to Dr. Blanco's authorization of Plaintiff's disabled parking permit because it was supported by Dr. Blanco's opinion that Plaintiff required a wheelchair, but the ALJ discounted Dr. Blanco's wheelchair opinion because it would not conflict with the sedentary work described in the ALJ's residual functional capacity ("RFC") assessment. *Id*.

Plaintiff challenges the ALJ's discounting of Dr. Blanco's opinions, arguing that the opinions were supported by Dr. Blanco's longitudinal treating relationship and many clinical findings, but Plaintiff has not argued or shown that the ALJ erred in finding the opinions to be inconsistent with the treatment notes of Plaintiff's neurologists, who provided specialized care for Plaintiff's multiple sclerosis. (Dkt. # 20 at 9.) The ALJ did not err in discounting Dr. Blanco's opinions based on inconsistency with the neurologists' treatment notes. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record).

Plaintiff also argues that Dr. Blanco was "justifiably 'stunned'" (dkt. # 20 at 9 (quoting AR at 2340)) by the ALJ's decision denying Plaintiff's benefits claim but has not shown that the ALJ erred in finding that this comment suggested that Dr. Blanco was an advocate for Plaintiff's benefits application instead of an objective treatment provider. *See, e.g.*, *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992).

Lastly, Plaintiff argues that by discounting Dr. Blanco's opinion that she required a wheelchair, the ALJ was improperly acting as her own medical expert. (Dkt. # 20 at 9.) This argument overlooks the ALJ's stated reasoning, however: the ALJ indicated that she discounted

ORDER - 9

Dr. Blanco's wheelchair opinion due to its limited probative value as to Plaintiff's vocational capacity because it would not preclude the sedentary work described in the ALJ's RFC assessment. *See* AR at 39. Plaintiff has not shown that the ALJ erred in this reasoning.

Because Plaintiff has failed to establish error in the ALJ's assessment of Dr. Blanco's opinions, the Court affirms this portion of the ALJ's decision.

### C.  The ALJ Did Not Err in Discounting Lay Evidence

Plaintiff's friend, Lance Worth, wrote a statement describing Plaintiff's depression and multiple sclerosis symptoms and indicating that he believed Plaintiff could not work even part-time. AR at 602-03. The ALJ found that Mr. Worth's statement was consistent with Plaintiff's own allegations and explained that she discounted Mr. Worth's statement because it was inconsistent with the objective medical evidence and Plaintiff's childcare, travel, and household activities. *Id*. at 40.

Plaintiff's opening brief does not acknowledge the ALJ's rationale for discounting Mr. Worth's statement, and claims that the ALJ provided no germane reason for discounting this lay statement, as required in the Ninth Circuit. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) ("If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness."). Plaintiff has not explained why the ALJ's reasons are not germane, and the Ninth Circuit has previously approved of an ALJ's discounting of a lay statement based on inconsistency with medical evidence and/or a claimant's activities. *See Carmickle*, 533 F.3d at 1164 (activities); *Bayliss*, 427 F.3d at 1218 (medical evidence).

On reply, Plaintiff contends that the ALJ's reasons for discounting Mr. Worth's statements are not supported by substantial evidence. (Dkt. # 27 at 7.) As explained, however, in the section addressing the ALJ's assessment of Plaintiff's testimony, *supra*, substantial evidence

ORDER - 10

in the record supports the ALJ's finding that the objective evidence was inconsistent with the limitations alleged by Mr. Worth. The ALJ cited evidence of Plaintiff's normal gait and strength, as well as normal mental findings, which are inconsistent with the physical and mental limitations described by Mr. Worth. *See* AR at 35-36. Plaintiff has not shown that the ALJ erred in discounting Mr. Worth's statement as inconsistent with the medical evidence.

### D. The Procedure for Removal of the Commissioner of Social Security is Unconstitutional but Does Not Invalidate the ALJ's Decision

Plaintiff contends this case must be remanded because the structure for removing the Commissioner of Social Security violated separation of powers under Article II of the U.S. Constitution, such that the Social Security Administration's ("SSA") decision to deny her benefits was made by individuals who had not properly been delegated authority to make such decisions.[5]

In her complaint, Plaintiff did not include any claim based on a constitutional violation.[6] (*See* dkt. # 6.) Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint need not provide "detailed factual allegations," but it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v.*

---

[5] The ALJ who decided Plaintiff's case was appointed by then-Acting Commissioner Nancy Berryhill. *See* SSR 19-1p, 2019 WL 1324866, at *2 (Mar. 15, 2019). Defendant contends Ms. Berryhill, as Acting Commissioner, was not subject to the same removal provision as Commissioner Saul. The Court need not reach this issue because, as explained below, Plaintiff cannot establish the removal provision at issue here — and the one to which Commissioner Saul *was* subject — caused her harm.

[6] The Court recognizes this case was filed utilizing the Court's "Pilot Program for Electronic Service in Social Security Cases," which applies only to actions against the Commissioner in which "the only claim that is being brought is pursuant to 42 U.S.C. § 405(g)." Amended General Order 04-15 at 2. An action alleging any claim other than a § 405(g) claim must be filed through a different avenue. *Id.* ("In particular, the Pilot Program does not apply to (a) complaints that include claims against the Commissioner in addition to, or other than, those brought pursuant to 42 U.S.C. § 405(g)[.]"). Whether filed under a § 405(g) claim or on its own, Plaintiff was not foreclosed from asserting her constitutional claim in her complaint.

*Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must plead enough facts "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Consequently, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Twombly,* 550 U.S. at 555 n.3.

In the absence of any notice of a claim or any supporting facts pleaded in the complaint, raising the claim in briefing is insufficient to present the claim to the Court. *Cf. Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (Ninth Circuit "precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court."); *see also Pac. Coast Fed'n of Fishermen's Associations v. Glaser*, 945 F.3d 1076, 1086-87 (9th Cir. 2019). Plaintiff contends she can raise this issue for the first time in federal court because it is a pure issue of law not dependent on the record below, and because the issue has a wide impact on claimants seeking judicial review. (Dkt. # 20 at 18.) The issue, however, is not that she failed to raise the issue before the agency, but that she failed to state a claim in her complaint before this Court. Briefing on Plaintiff's agency appeal, like briefing on a summary judgment motion, "is not a procedural second chance to flesh out inadequate pleadings." *Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006).

Nevertheless, even if the Court were to consider Plaintiff's unpled constitutional claim, the Court concludes it would not require remand. For the reasons explained herein, the Court agrees with Plaintiff that the Commissioner enjoyed unconstitutional tenure protection but finds that the unconstitutional provision does not deprive the Commissioner of the authority to issue a

decision on Plaintiff's claim and that Plaintiff has not alleged any compensable harm that requires reversal of the ALJ's decision denying benefits.

### 1.     The Commissioner's Tenure Protection is Unconstitutional

Removal of the Commissioner of Social Security is governed by 41 U.S.C. § 902(a)(3). Plaintiff argues two recent Supreme Court decisions — *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), and *Collins v. Yellen*, 141 S. Ct. 1761 (2021) — mandate a finding that the removal clause in section 902 violates the Constitution's separation of powers.[7] In *Seila Law*, the Supreme Court held the Consumer Financial Protection Bureau's ("CFPB") removal structure, which allowed for the CFPB director to be removed by the President only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3), violated the separation of powers by insulating the director from removal by the President. *Seila Law*, 140 S. Ct. at 2197.

The Supreme Court addressed a removal provision again the following year in *Collins*. There, the Court held a provision limiting the President to removing the director of the Federal Housing Finance Agency ("FHFA") only for cause violated the separation of powers. *Collins*, 141 S. Ct. at 1783 (holding that "*Seila Law* is all but dispositive").

Applying the holdings in *Seila Law* and *Collins* here makes it clear that the provision for removal of the Commissioner of Social Security, 41 U.S.C. § 902(a)(3), violates separation of powers. The Commissioner, a single officer at the head of an administrative agency, is removable only for cause. *See* 41 U.S.C. § 902(a)(3). This statutory clause suffers from the same defect as the removal provisions at issue in *Seila Law* and *Collins*, and thus violates separation of

---

[7] The Commissioner "agree[s] that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." (Dkt. # 23 at 4.)

ORDER - 13

powers. *See Seila Law*, 140 S. Ct. at 2197; *Collins*, 141 S. Ct. at 1783; *see also* Office of Legal Counsel, *Constitutionality of the Commissioner of Social Security's Tenure Protection*, 2021 WL 2981542, at *7 (July 8, 2021).

### 2. The Constitutional Violation Did Not Deprive the Commissioner of the Authority to Resolve Plaintiff's Claim

Plaintiff contends the remedy for the unconstitutionality of the removal provision in § 902(a)(3) is reversal and remand. Plaintiff contends the Commissioner's appointment and tenure were unconstitutional because of the removal provision, depriving the Commissioner of the ability to delegate decision-making to the ALJ and Appeals Council who considered Plaintiff's case. Plaintiff's argument fails.

First, the removal provision is severable. In *Seila Law*, the Court found the constitutionally defective removal procedure was severable from the remainder of the CFPB's governing statutes because the CFPB was capable of functioning independently even if the offending removal restriction was erased. 140 S. Ct. at 2209, 2245.[8] Similarly, if the removal clause in § 902(a)(3) is stricken, the SSA remains fully functional.

Second, the removal provision does not render the Commissioner's appointment invalid, and thus does not automatically void the SSA's actions under the Commissioner. In *Collins*, the Court found the defective removal procedure did not render the FHFA's actions void from the outset. 141 S. Ct. at 1787 ("Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of

---

[8] Four Justices dissented from Chief Justice Roberts's lead opinion holding the CFPB removal provision was unconstitutional but agreed that "*if* the agency's removal provision is unconstitutional, it should be severed." *Id.* at 2245 (Kagan, J., concurring in the judgment with respect to severability and dissenting in part).

the actions taken by the FHFA [challenged on appeal] as void."). The same is true here. The infirm *removal* provision does not render Commissioner Saul's *appointment* invalid, which in turn does not render the ALJ's disability decision void.

        3.      *Plaintiff Cannot Link Any Harm to the Commissioner's Unconstitutional Tenure Protection*

Third, Plaintiff has not made any clear allegation that the removal clause in § 902(a)(3) inflicted compensable harm.[9] In *Collins*, the Court found it was "possible for an unconstitutional provision to inflict compensable harm," and remanded to the lower court to determine whether the removal provision "inflicted harm." 141 S. Ct. at 1788–89. In that case, the action challenged by plaintiffs was the directors' adoption and implementation of an amendment (the "Third Amendment") to certain financial agreements that "materially changed the nature of the agreements" and resulted in the companies in which plaintiffs were shareholders transferring to the U.S. Treasury "at least $124 billion dollars more than the companies would have had to pay" under the prior form of the agreements. *Id.* at 1774. The Third Amendment was not subject to full judicial review, *id*. at 1775-76, 1785, and the Supreme Court thus found that fact-finding by the lower courts was required in order to determine whether plaintiffs suffered harm directly as a result of the FHFA director's unconstitutional tenure protection. *See id.* at 1789.

Here, in contrast, Plaintiff argues she is harmed by "the fact that the decision in this case was made and reviewed with Saul's own authority, protected by §902(a)(3), not the President's authority, making the disability determination null." (Dkt. # 27 at 10.) As explained above,

---

[9] Plaintiff argues she need only show that a decision in her favor could lead to at least some relief, citing *Tafoya v. Kijakazi*, -- F.Supp.3d --, 2021 WL 3269640 (D. Colo. July 29, 2021). (Dkt. # 27 at 10.) But *Tafoya* only addressed a plaintiff's standing to bring a claim, which requires far less of a showing than establishing harm from an unconstitutional provision. *See Collins*, 141 S.Ct at 1779, 1789 (finding standing but remanding to lower courts to determine whether the unconstitutional removal provision inflicted compensable harm). Here, the Commissioner has not challenged Plaintiff's standing to bring a separation of powers claim.

ORDER - 15

however, the ALJ's decision is not nullified by the infirm removal provision. *Cf.* 141 S. Ct. at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference.").

Plaintiff has not alleged any connection between the unconstitutional limit on Commissioner Saul's removal and the ALJ's decision denying her benefits. *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021) ("[T]here is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on that ground."). Accordingly, while the removal clause in § 902(a)(3) violates separation of powers, it does not independently require the Court to reverse the ALJ's decision absent a showing of compensable harm.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED,** and this case is **DISMISSED** with prejudice.

Dated this 18th day of November, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 16